UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NICOLE MWESIGWA, et al.,            )
                                    )
    Plaintiff(s),                   )
                                    )
vs.                                 )   Case No. 4:08CV605 JCH
                                    )
DAP, INC.,                          )
                                    )
    Defendant(s).                   )

## MEMORANDUM AND ORDER

This matter comes before the Court on DAP, Inc.'s Motion for Summary Judgment. (Doc. No. 39). This matter has been fully briefed and is ready for disposition.

## BACKGROUND

On August 11, 2006, Michael Mwesigwa ("Mr. Mwesigwa") dropped a can of DAP Gel Formula Contact Cement ("DAP Cement") in his laundry room. (Plaintiffs' Statement of Uncontroverted Material Facts and Exhibits ("PSUMF"), Doc. No. 73, ¶ 5).[1] Mr. Mwesigwa attempted to wipe up the spilled DAP Cement from his laundry room floor. (PSUMF, ¶ 7). Vapors from the spill ignited and caused a flash fire. (Memorandum in Opposition to Motion for Summary Judgment ("Response"), Doc. No. 72, p. 2). Mr. Mwesigwa received second and third degree burns to 80 percent of his body. (Response, p. 2). Mr. Mwesigwa died on October 8, 2006, almost two months after the fire. (Complaint ("Compl."), Doc. No. 1, ¶ 17; Response, p. 1).

On April 29, 2008, Plaintiffs Nicole Mweisgwa ("Nicole"), spouse of Mr. Mwesigwa, S.M., minor child of Mr. Mwesigwa, and M.M., minor child of Mr. Mwesigwa (collectively, "Plaintiffs")

---

[1] While being transported to the hospital, Mr. Mwesigwa reportedly told emergency medical services workers that "he was working with glue, trying to plaster" at the time of the fire. (Defendant's Statement of Uncontroverted Material Facts and List of Exhibits ("DSUMF"), Doc. No. 41, ¶13; Doc. No. 41-3).

filed a four-count Complaint against DAP, Inc. ("DAP") for Wrongful Death-Negligence (Count I), Wrongful Death-Strict Liability/Product Defect and Failure to Warn (Count II), Negligent Misrepresentation (Count III), and Violations of the Consumer Product Safety Act (Count IV). On November 9, 2009, Defendant filed a Motion for Summary Judgment on all of Plaintiffs' claims. (Doc. No. 39).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258. "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (citing Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## DISCUSSION

### I. COUNTS I and II (Wrongful Death-Negligence, Wrongful Death-Strict Liability/Product Defect and Failure to Warn)

#### A. Preemption Under CPSA For Defective Design, Sales and Distribution

Defendant claims that Plaintiffs' claims in Counts I and II for negligence and strict liability are expressly and impliedly preempted by the Consumer Product Safety Act (CPSA). The CPSA "expresses the intent of to preempt state safety standards or regulations that are not identical to the requirements of the federal standard." Ball v. BIC Corp., No. 4:97-CV-02467, 2000 U.S. Dist. LEXIS 19699, at *6 (E.D. Mo. Feb. 8, 2000)(citing 15 U.S.C. § 2075(a)).

    1.    Express Preemption

Plaintiffs allege claims for defective design, sales, and distribution. Defendant claims that these claims are expressly preempted by the CPSA. "That statute established the Consumer Protection Safety Commission (CPSC), 15 U.S.C. § 2053, authorized it to promulgate federal product safety standards for various products, id. §§ 2056, 2058, and expressly preempted any non-identical state standards, id. § 2075." Moe v. MTD Prods., 73 F.3d 179, 181-82 (8th Cir. 1995). The preemption clause of the CPSA states as follows:

> Whenever a consumer product safety standard under this chapter is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, design, finish, construction, packaging, or labeling of such consumer product, unless such requirements are identical to the requirements of the Federal standard.

- 3 -

15 U.S.C. §2075(a).

Plaintiffs assert that their claims are excluded from preemption because of the savings clause of the CPSA. The savings clause of the CPSA provides that "[c]ompliance with consumer product safety rules or other rules or orders under this Act shall not relieve any person from liability at common law or under State statutory law to any other person." 15 U.S.C. §2074(a).

The Eighth Circuit and the Supreme Court have been reluctant to find express preemption in a design defect claim such as this. In Moe, the plaintiff was injured when he reached his hand inside the grass chute of a self-propelled mower. Moe, 73 F.3d at 181. The mower had been equipped with a safety device, a blade brake/clutch system ("BBC"), that permitted the cutting blade to rotate only when the control lever on the operator handle was engaged. Id. Upon inspection, plaintiff's family noted that the BBC control cable had broken. Id. The plaintiff alleged that "[a]lthough the mower's grass chute had a label warning of the danger of injury to the fingers from a rotating blade, ... an additional label should have been placed on the mower handle warning that the cable might fray." Id. The plaintiff also alleged that the design of BBC was defective because it caused the cable to fray. Id.

The Eighth Circuit held that the CPSA expressly preempted the plaintiff's failure to warn claim. The CPSC created a federal safety standard for lawnmowers when it promulgated a Safety Standard for Walk-Behind Power Lawn Mowers ("Mower Standard"). The Mower Standard required that a warning label be placed on each mower's blade housing, which warned against blade contact injury and included a depiction of a blade slicing into a hand. Moe, 73 F.3d at 182, n. 4 (citing 15 U.S.C. § 2056; 16 C.F.R. § 1205). The Eighth Circuit held that the Mower Standard preempted a failure to warn claim because the CPSA "preempts not only positive enactments of state standards, but also common law tort actions that would have the effect of creating a state standard." Id. at 182.

The Moe court also held that the CPSA savings clause did not preserve the plaintiff's failure to warn claim. Id. at 182-83.[2]

The Eighth Circuit, however, determined that a "defective design claim" was the type of claim that the savings clause preserved. Id. at 183. The Mower Standard required that each mower "have a blade control system that permits the blade to rotate only if the operator presses on a special control on the mower handle." Id. at 182, n. 5 (citing 16 C.F.R. § 1205.5(a)). The Mower Standard gives a manufacturer the an option of choosing between a BBC or an engine-kill system, which stops the engine when a control lever is released. Moe, 73 F.3d at 182, n. 5. The Eighth Circuit held that a tort action based on the defective design of the BBC "would not create a different standard for mower safety or impose additional requirements on the manufacturer." Id. at 183. Rather, allowing a tort action would have the effect of ensuring that manufacturers installed safety devices, such as the BBC, that worked and were properly designed. Id.

Likewise, the Supreme Court held that the presence of a saving clause prohibited a broad reading of the preemption provision to include common law claims. Geier v. American Honda Motor Co., Inc., 529 U.S. 861, 867-72 (2000). "The savings clause assumes that there are some significant number of common-law liability cases to save." Id. at 868. "And a reading of the express pre-emption provision that excludes common-law tort actions gives actual meaning to the saving clause's literal language, while leaving adequate room for state tort law to operate." Id. The Supreme

---

[2]The Moe court noted that a purpose of the CPSA is to "develop uniform safety standards for consumer products and to minimize conflicting State and local regulations." Id. at 183 (citing 15 U.S.C. § 2051(b)(3)). The Eighth Circuit held that "[t]he statute's express preemption of mower standards that are not identical to a federal standard addressing the same risk of injury is consistent with this goal. The savings clause should not be interpreted to subvert the preemption provision and should be read to save those claims that are not expressly preempted." Moe, 73 F.3d at 183; see also Ball, 2000 U.S. Dist. LEXIS 19699 at *5-6 (citing Moe, 73 F.3d at 182) ("The Eighth Circuit has held that the statute [CPSA] preempts common law tort actions, as well as positive enactments of state statutes.").

Court found "no convincing indication that Congress wanted to pre-empt, not only state statutes and regulations, but also common-law tort actions, in such circumstances." Id. at 868. Thus, the Court found that the savings clause removed tort actions from the scope of the express preemption clause. Id. at 869. The savings clause preserved "those actions that seek to establish greater safety than the minimum safety achieved by a federal regulation intended to provide a floor." Id. at 870.

Based upon this case law, the Court finds no express preemption of Plaintiffs' claims for defective design, sale and distribution. "In light of [the Geier] decision, there can be no dispute that plaintiffs' claims are not expressly preempted by the CPSA." Colon v. BIC USA, Inc., 00 Civ. 3666, 2001 U.S. Dist. LEXIS 797, at *6 (S.D.N.Y. Jan. 30, 2001). The CPSA specifically banned the sale of contact cement with flash points of twenty degrees Fahrenheit or less and with a viscosity between 300 cPs and 6,000 cPs.[3] (Memorandum in Support of Motion for Summary Judgment ("Memorandum in Support"), Doc. No. 40, p. 5). The Court acknowledges that it is permissible to sell contact cement with flash points in excess of 20 degrees Fahrenheit and a viscosity of greater than 6,000 cPs under the CPSA. See id. The Court, however, finds that limitations on selling a product with flash points in excess of 20 degrees Fahrenheit and a viscosity of greater than 6,000 cPs were not be expressly preempted by the CPSA. Accordingly, the Court finds that Plaintiffs' claims are not expressly preempted by the CPSA. See Leipart v. Guardian Indus., Inc., 234 F.3d 1063, 1069-70 (9th Cir. 2000) (holding that plaintiff's common law claims were not expressly preempted by the CPSA).

---

[3]The CPSA bans "extremely flammable contact adhesives which have been found to present an unreasonable risk of injury to consumers of burns resulting from explosive and flashback fire." 16 C.F.R. § 1302.2; see also 16 C.F.R. § 1302.4 ("Any extremely flammable contact adhesive and similar liquid or semiliquid consumer product as defined in § 1302.3 (b), which has been manufactured or initially introduced into commerce after January 17, 1978, is a banned hazardous product."). The CPSA defines, in relevant part, an extremely flammable contact adhesive as having a flash point at or below 20 degrees Fahrenheit and having a wet viscosity within the range of 300-6,000 cPs. 16 C.F.R. § 1302.3(b).

2. Implied Preemption

Defendant also argues that Plaintiffs' claims are barred by conflict preemption. "[C]onflict pre-emption is different [from express pre-emption] in that it turns on the identification of 'actual conflict,' and not on an express statement of pre-emptive intent." Geier, 529 U.S. at 884. In Geier, the Supreme Court determined that the savings clause removed tort actions from the scope of the express preemption clause, but held that ordinary conflict preemption principles still applied. The plaintiff alleged a common law tort action for negligence based upon the manufacturer's failure to provide air bags. The Court held that a common-law tort action, which would effectively mandate air bags, conflicted with the federal safety standard. Id. at 874-86. Thus, the common law tort action was preempted by the federal safety standard. Id. at 886.

Thus, under conflict preemption, compliance with a CPSC regulation preempts a design defect claim that imposes a more stringent design standard where the regulation embodies the regulatory body's policy judgment about the relevant risks associated with the product. Id. at 870-72 ("Insofar as petitioners' argument would permit common-law actions that 'actually conflict' with federal regulations, it would take from those who would enforce a federal law the very ability to achieve the law's congressionally mandated objectives that the Constitution, through the operation of ordinary pre-emption principles, seeks to protect."). The Commission designed the regulation "to eliminate or reduce is the risk of injury of burns from explosive vapor ignition and flashback fire associated with extremely flammable contact adhesives." 16 C.F.R. §1302.5(a). The Commission, however, noted the need for contact adhesives and the probable adverse effect of a ban on contact adhesives. In regulating contact adhesives, the Commission clearly intended to permit companies to continue making flammable, but not extremely flammable, contact adhesives available to consumers. See 16 C.F.R. §1302.5(c)(2).

Here, Plaintiffs allege that Defendant should not be allowed to sell the unreasonably dangerous product simply because it has not been banned. (Response, p. 6). Plaintiffs claim that the DAP Cement "is defective because if accidentally dropped by a consumer, he or she can be caused death; regardless of the product's flash point or viscosity [sic]." (Plaintiffs' Sur-reply to Defendant's Reply to Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment ("Surreply"), Doc. No. 86, p. 4). Although they claim that DAP Cement is "just as dangerous at 19 flash point as it is at 25 flash point," Plaintiffs never identify the specific design defect of the product or how Defendant could have made this product safer for consumer use. (Response, p. 6). Thus, Plaintiffs are apparently seeking to assert a design defect claim based upon the DAP Cement's inherent flammability.

In turn, Defendant claims that Plaintiffs' defective design, sale, and distribution claims are preempted because they frustrate and conflict with the regulations set forth by the CPSC for contact cement. The CPSC has banned all adhesives with a flash point of 20 degrees Fahrenheit or less and viscosities below 6,000 cPs. (Response, p. 6). The DAP Cement had a flash point of 21 degrees Fahrenheit or greater and a viscosity between 7,000 and 9,000 cPs. (Response, p. 6; PSUMF, ¶¶ 26-28; Doc. No. 41-4). The DAP Cement, therefore, conformed with the CPSC's regulations and was approved for sale to consumers.

Accordingly, the Court finds that Plaintiffs' defective design, sale, and distribution claims impliedly conflict with the CPSA regulations that specifically permit the sale of contact cement with a viscosity of greater than 6,000 cPs and a flash point of greater than 20 degrees Fahrenheit. The regulations promulgated by the CPSC address the flammability warnings that must be applied to contact cement. Cf. Colon v. BIC USA, Inc., No. 00 Civ. 3666, 2001 U.S. Dist. LEXIS 797, at *7-8 (S.D.N.Y. Jan. 30, 2001)(no preemption where CPSC regulations do not address what warnings must

be applied to lighters, or what colors may be used in connection with the manufacture of such lighters). The CPSC reviewed and addressed the dangers of contact cement and weighed the benefits of having such a product on the market. "Interpreting federal regulation in this area as a liability floor that may be enhanced by state law," would undercut the federal regulations and the Committee's conclusions regarding the proper balance between banning contact cement and making it available at a reasonable cost to the public. Bic Pen Corp. v. Carter, 251 S.W. 3d 500, 507 (Tex. 2008) (state law claims preempted where the commission's imposition of a child resistance standard of 85% was the result of the Commission weighing several factors, "including child resistance, overall safety, the realities of manufacturing, the variability and randomness of child testing, the product's utility, and the importance of consumer acceptance."). Under Plaintiffs' theory, a jury could override the cost-benefit analysis done by CPSC and determine for itself whether the product was unreasonably dangerous. The Court finds that banning the sale of flammable contact cement under the guise of a common law tort action is impliedly preempted by the CPSA, and Plaintiffs' common law tort claims for defective design, sales, and distribution are barred by conflict preemption. See Firth v. BIC Corp., 863 So.2d 960, 967 (Miss. 2004) (state law claim preempted by the CPSA where allowing the state claim would result in a more stringent state standard which would stand as an obstacle to the accomplishment of the federal objective of producing for the adult consumer a usable lighter that was as child-resistant as feasible for children five years of age and younger).

### B. Federal Hazardous Substances Act

Plaintiffs' assert that their "failure to warn claim relies on defendant's failure to comply with the Federal Hazardous Substances Act ["FHSA"]." (Response, p. 2). Plaintiffs claim that there are

issues of fact regarding "whether Mr. Mwesigwa accidentally dropped the can of contact adhesive and whether DAP Products, Inc. complied with the Federal Hazardous Substances Act when it failed to include conspicuous precautionary statements of actions to be taken or avoided to prevent a fire hazard caused by an accident spill." (Response, p. 2).[4]  Primarily, the parties disagree regarding whether Defendant should have included a warning regarding the proper response in the event of an accidental spill.

The purpose of the FHSA was to "provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." Moss v. Parks Corp., 985 F.2d 736, 739 (4th Cir. 1993) (quoting House Comm. On Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R. Rep. No. 1861, 86th Cong., 2d Sess. 2 (1960), reprinted in 1960 U.S.C.C.A.N. 2833, 2833). The FHSA includes a provision to preempt any state cause of action that seek to impose a labeling requirement different from the requirements in the act. 15 U.S.C. §1261. The preemption provision of the FHSA reads as follows:

> if a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [15 U.S.C. §§1261(p) or 1262(p)] designed to protect against a risk of illness or injury associated with the substance, no State ... may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under 2(p) or 3(b).

---

[4]Plaintiffs' allegations in their Complaint regarding their failure to warn claims are not as precise. In Count I, Plaintiffs alleged that "DAP, Inc. failed to warn or otherwise make consumers aware of the dangers of using DAP Weldwood Contact Cement" and "DAP, Inc. failed to comply with the requirements of the Federal Hazardous Substances Act." (Compl., ¶¶ 23(c), 23(d)). In Count II, Plaintiffs alleged that "[a]t the time of design, manufacture, distribution and sale of the DAP Weldwood Contact Cement, it was defective and unreasonably dangerous because of an inadequate warning to 'turn off main gas valve' when DAP, Inc. knew or should have known Do-It-Yourself consumers would not comply with this unreasonable instruction and thus, the product will almost always be used under unreasonably dangerous conditions." (Compl., ¶ 32(b)).

15 U.S.C. §1261 note (b)(1)(A). "It is beyond dispute that the plain language of the above provision [15 U.S.C. §1261 note (b)(1)(A)] preempts state laws that dictate labeling requirements not 'identical' to the regulations embodied in the FHSA." Pennsylvania Gen. Ins. Co. v. Landis, 96 F. Supp. 2d 408, 414 (D.N.J. 2000).

Plaintiffs assert that Defendant should be liable for failure to warn of the danger of an accidental spill and for failure to include the proper procedures in the event of an accidental spill. (Response, pp. 8-9; PSUMF, ¶ 11). In support of their claim, Plaintiffs note that DAP's Material Safety Data Sheet includes a warning on "accidental release measures": "SPILL OR LEAK PROCEDURES: Dike spill area. Immediately eliminate sources of ignition. Use absorbent material or scrape up dried material and place into containers." (Response, p. 8; Doc. no. 73-2). Similarly, Sample Label 3, from the Industry Labeling Guide, includes the precautionary statement, "If spilled, contain spilled material and remove with inert absorbent." (Doc. No. 41-9, p. 5; Doc. No. 73-7). Neither of these accidental spill or leak warnings was included on the DAP Cement container purchased by Mr. Mwesigwa.

Defendant contends that it is entitled to summary judgment on Plaintiffs' failure to warn claims in Counts I and II because its labeling requirements complied with the FHSA and any additional requirements are preempted by the FHSA. Defendant contends that Plaintiffs cannot bring a lawsuit that would have the effect of mandating additional warnings, other than those required by the FHSA. "[A] common law tort action based upon failure to warn may only be brought for noncompliance with existing federal labeling requirements. In actions such as the present one, if the plaintiff requests a label that is 'more elaborate or different' than the one required by the FHSA and its regulations, the claim is preempted." Moss, 985 F.2d at 740 ; Mattis v. Carlon Elec. Prods., 295 F.3d 856, 862 (8th Cir. 2002) (citing 15 U.S.C. § 1261 note (b)(1)(A) ("a plaintiff may not bring a

claim for failure to warn based on state requirements that are more elaborate than the FHSA"). Therefore, to prevail on a failure to warn claim, plaintiff has the burden of proving the DAP Cement label does not comply with the FHSA. Mattis, 295 F.3d at 862.

Plaintiffs' claim for failure to warn fails because they have not alleged that Defendant's label did not comply with the FHSA. The labeling on the DAP Cement container conformed with the requirements under the FHSA. (DSUMF, ¶¶ 34-44). Specifically, the FHSA requires that the Cement include a statement of the "principal hazard or hazards, such as 'Flammable,' 'Combustible,' 'Vapor Harmful,' 'Causes Burns,'... or similar wording descriptive of the hazard." 16 C.F.R. §1500.3(a)(14)(i)(E). The FHSA also requires that the product must contain "precautionary statements describing the action to be followed or avoided". 16 C.F.R. §1500.3(a)(14)(i)(F) The warnings on the DAP Cement informed users that the product was flammable and that the vapors could travel from the can to a source of ignition. (DSUMF, ¶¶ 40-41). The warnings also told the consumer how to store the DAP Cement. (DSUMF, ¶ 41(B)).

Plaintiffs' proposed "accidental spill" warning was not a warning required under the FHSA. Rather, any "accidental spill" warning would be subsumed within warnings regarding proper usage or storage. The label states "PRECAUTIONARY MEASURES FOR USE, HANDLING, STORAGE, AND DISPOSAL: Use in well ventilated area. Provide fresh air such that chemical odors cannot be detected during use and while drying. ... Vapor may ignite explosively. Keep away from heat, sparks, and flames. Turn off all stoves, heaters, electric motors and other sources of ignition during use and until all vapor is gone. ..." (DSUMF, ¶ 41(B)). The label also instructed a consumer in the proper handling and storage of the product: "[k]eep container closed when not in use." (DSUMF, ¶ 41(B)). Plaintiffs' attempt to create a third category of warnings for "accidental spill" appears to be a distinction without a difference. An "accidental spill" either occurs while the

product is being stored or while the product is in use. Defendant was not negligent for failing to provide the additional accidental spill warning suggested by the Plaintiffs.

Moreover, Defendant's warnings for use of the product and for storage of the product were effective for accidental spills of the DAP Cement. (Memorandum in Support, pp. 8-9; DSUMF, ¶¶ 50-52). Defendant suggest, and Plaintiffs do not deny, that if Mr. Mwesigwa had followed the warning for proper use and turned off all possible ignition sources, even after the "accidental spill," then he would not have suffered injury. The accidental spill warning and the use warning both attempted to warn the consumer of the flammable risk. In addition, Defendant asserts that the same precaution applied for an accidental spill or intentional use of the product. In both instances, the user was instructed to turn off all flame or ignition sources. Accordingly, Plaintiffs cannot claim that an additional warning was required under the FHSA.

Thus, Defendant fully complied with the warnings required under the FHSA. Defendant was required to include warnings regarding the proper usage and storage of the product, which it did. The additional "accidental spill" warning that Plaintiffs request in their failure to warn claim are preempted by the FHSA. See Comeaux v. National Tea Co., 81 F.3d 42, 44 (5th Cir. 1996) (where the warnings given were in compliance with and fulfilled the warnings obligations under the FHSA and its implementing regulations, then any other or further warnings requirements under the state statute were preempted).

## II. COUNT III (Negligent Misrepresentation)

Plaintiffs allege that Defendant represented that "its product could be safely used in the home environment." (Compl., ¶ 39). Plaintiffs allege the following specific misrepresentations:

a) The flamability danger presented by DAP Weldwood Contact Cement formulated with a low flash point and high evaporation rate was designed to narrowly avoid a ban by the [CPSC] on contact adhesives incapable of being made safe by written warnings or other means;

b) The propensity of flammable vapors emitted from the use of DAP Weldwood Contact Cement to stay low to the floor, be drawn to operate pilot lights and appliance burners, and cause flash back fires to the container or areas of application;

c) The difficulty in dispensing flammable vapors in below-grade applications, regardless of opened windows and doors and cross-ventilation;

d) The danger, as annually documented by the CPSC, of death or injury due to the ignition by pilot lights of flammable vapors;

e) The dangerous characteristics of DAP Weldwood Gel Formula Contact Cement as outlined in the material safety data sheet for DAP Weldwood Gel Formula Contact Cement;

f) The failure to disclose that the flooring/adhesive industry recommends the use of non-flammable adhesives in residential and home applications; and

g) The failure to disclose by defendant of a substitute, non-solvent adhesive manufactured and sold by defendant that could be safely used in below grade applications.

(Compl., ¶ 40).

Defendant asserts that Plaintiffs' claims in Count III are preempted by the FHSA. Defendant correctly states that each of Plaintiffs' allegations in paragraph 40, except for (b), seek to impose labeling requirements on Defendant that are not required by the FHSA. Accordingly, those claims are preempted by the FHSA.

Plaintiffs' allegations in paragraph 40(b) regard statements mandated by the FHSA. As discussed previously, the DAP Cement contained the statements required by the FHSA regarding the principal and precautionary statements required by the FHSA. Accordingly, the Court finds no evidence of a fraudulent misrepresentation and Plaintiffs' claim fails as a matter of law.

**III.     COUNT IV (Violation of the Consumer Product Safety Act)**

       A.                  Private Cause of Action

Plaintiffs allege that "Defendant mislabeled and misbranded DAP Weldwood Contact Cement by failing to conspicuously state: (a) The signal word 'Danger' on the product because it is extremely flammable; and (b) An affirmative statement of the principal hazard as 'EXTREMELY FLAMMABLE.'" (Compl., ¶ 50). Defendant argues that it is entitled to summary judgment on Count IV because Plaintiffs cannot bring a private cause of action under the CPSA for a violation of the FHSA.[5]

15 U.S.C. § 2072 provides support for a right to private cause of action under the CPSA for damages. 15 U.S.C. § 2072[6] provides that

> [a]ny person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, shall recover damages sustained[.]

A section 23(a) private cause of action arises from a rule violation only. Drake, 797 F.2d at 604. "Section 23(a) does not allow a private action for violations of the statute itself." Drake, 797

---

[5]Plaintiffs allege that "[a]uthority under the Federal Hazardous Substances Act is vested in the Consumer Product Safety Commission by Section 30(a) of the Consumer Product Safety Act (15 U.S.C. § 2079(a)). (Compl., ¶ 48)

[6]Also referred to as Section 23(a). See Drake v. Honeywell, Inc., 797 F.2d 603, 604, n. 1 (8th Cir. 1986).

F.2d at 604.[7] Plaintiffs' attempt to rely on a section of the FHSA to challenge the warnings on the DAP Cement is unavailing because the act is not a "consumer product safety rule" or "other order of the Commission." In re Mattel, Inc., 588 F. Supp. 2d 1111, 1117 (C.D. Cal. 2008). Rather, the FHSA is an act of Congress. Id. Accordingly, Plaintiffs cannot state a private cause of action under CPSA for a violation of the FHSA.

In addition, Plaintiffs' allegation that the product is mislabeled under the FHSA is incorrect. First, the word "DANGER" appears on the product.[8] (Memorandum in Support, p. 14; DSUMF, ¶ 39). Second, Defendant was not required to include a warning that DAP Cement was "EXTREMELY FLAMMABLE" under the CPSA. The CPSA defined the term "extremely flammable" as any substance with a flashpoint at or below 20 degrees Fahrenheit. 16 CFR 1500.3(c)(6)(i). In contrast, the term "flammable" applies to any substance having a flashpoint of above 20 degrees Fahrenheit and below 100 degrees Fahrenheit. 16 C.F.R. 1500.3(c)(6)(ii). The parties do not dispute that the DAP Cement had a flash point of greater than twenty degrees. Accordingly, Defendant was not required to label the DAP Cement as "EXTREMELY FLAMMABLE," and the DAP Cement was properly labeled as "FLAMMABLE." Defendant's Motion for Summary Judgment on Plaintiffs' fraudulent misrepresentation claim fails as a matter of law.

## IV.   Punitive Damages

---

[7]In Drake, the plaintiff claimed that the defendant violated Section 15(b) for the CPSA, which "requires a manufacturer, distributor or retailer who obtains information that reasonably supports the conclusion that a product contains a defect which could create a substantial product hazard to notify the Commission of the product defect." Id. at 604. The Commission promulgated rules to expand upon this statutory reporting requirement. Id. at 605 (citing 16 C.F.R. §§ 1115, 1115.10, 1115.12, 1115.13, 1115.14).

[8]The DAP Cement warned of "DANGER" even though it had a flash point of greater than 20 degrees Fahrenheit. The FHSA requires that the "signal word 'DANGER'" appear on substances that are "extremely flammable." 16 CFR 1500.3(a)(14)(i)(C).

Defendant asserts that Plaintiffs do not have any evidence to support a claim for punitive damages under Missouri law. Plaintiffs' claim for punitive damages is moot because all of Plaintiffs' claims fail as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 39) is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that any outstanding motions are dismissed as moot.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 12th day of March, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE